UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS WAYNE CLARK,

    Plaintiff,

v.

    CASE NO. 2:09-CV-10300
    JUDGE PAUL D. BORMAN
    MAGISTRATE JUDGE PAUL J. KOMIVES

PATRICIA L. CARUSO, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION ON (1) DEFENDANTS' MOTION TO DISMISS (docket #17); (2) DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (docket #22); and (3) PLAINTIFF'S MOTION FOR INJUNCTION AND TEMPORARY RESTRAINING ORDER (docket #21)**

I.   RECOMMENDATION .................................................................. 1
II.  REPORT ............................................................................ 1
     A.   *Procedural Background* .................................................... 1
     B.   *Defendants' Motion for Summary Judgment* ................................... 5
          1.   *Legal Standard* ...................................................... 5
          2.   *Access to Courts* .................................................... 6
          3.   *Effect of <u>Jones-Bey v. MDOC</u>* ................................. 11
          4.   *Conspiracy* ......................................................... 15
     C.   *Defendants' Motion to Dismiss* ............................................ 17
     D.   *Plaintiff's Motion for Injunction* ........................................ 17
     E.   *Conclusion* ............................................................... 19
III. NOTICE TO PARTIES REGARDING OBJECTIONS ......................................... 19

\*  \*  \*  \*  \*

I.    RECOMMENDATION: The Court should grant defendants' motion for summary judgment (docket #22), deny as moot defendants' motion to dismiss for lack of exhaustion (docket #17), and deny plaintiff's motion for injunction and temporary restraining order (docket #21).

II.    REPORT:

A.    *Procedural Background*

Plaintiff Thomas Wayne Clark is a state prisoner who, at the times relevant to this complaint,

was incarcerated at the Gus Harrison Correctional Facility in Adrian, Michigan. Plaintiff commenced this action on January 27, 2009, by filing a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. Defendants are Patricia Caruso, director of the Michigan Department of Corrections; Warden Thomas Bell; Assistant Deputy Wardens Lee McRoberts and Peggy Bourne; Litigation Coordinator Karl Wright; Resident Unit Manager Alfred Williams; Assistant Resident Unit Supervisor Mark Mackintosh; and Resident Unit Officer Jeremy Leffler.

Plaintiff alleges that on October 9, 2008, defendant Leffler conducted a search of his cell and confiscated two folders containing approximately three inches of legal documents related to a case filed by plaintiff in the Michigan Court of Claims. Plaintiff alleges that he informed Leffler that the documents were related to pending litigation. *See* Compl., ¶ 13. Defendant Leffler completed on that date a Contraband Removal Record indicating that he was confiscating "2 folders containing UCC material," *See id.*, Ex. 2, as well as a Notice of Intent to Conduct an Administrative Hearing, on which plaintiff requested a hearing, *see id.*, Ex. 1. Plaintiff directed a Prisoner Kite to defendant Mackintosh on October 13, requesting an immediate hearing and arguing that he was allowed to possess the confiscated materials. *See id.*, ¶ 14 & Ex. 3. Plaintiff alleges that he met with defendant Mackintosh on that date, and that defendant Mackintosh said that he would examine the materials within two days and return whatever materials plaintiff was permitted to possess. *See id.*, ¶ 15. On October 15, plaintiff filed a Step I grievance. Defendant Williams interviewed plaintiff on October 16, at which time plaintiff informed him that the materials were related to pending litigation in the Michigan Court of Claims. Plaintiff alleges that defendant Williams indicated he would check with defendant Mackintosh regarding the status of plaintiff's documents. *See id.*, ¶ 16 & Ex. 5.

An administrative hearing was held before defendant Mackintosh on October 21. Following

the conclusion of the hearing, "3 documents specifically referenced by [plaintiff] as current pending litigation, litigation that is ready to be submitted to the courts, and evidence in the form of proof of service forms," totaling 98 sheets of paper, were returned to plaintiff. Also returned to plaintiff was "approximately 2 ½ inches of material including assorted papers, forms, folders, carbon paper, envelopes, a legal pad, and a Michigan Court of Appeals Guide Book." However, defendant Mackintosh determined that the remaining 526 sheets of paper constituted contraband under Policy Directive 05.03.118(D)(7) (prohibiting a prisoner from possession "[m]ail for the purpose of operating a business enterprise while within the facility."). Defendant Mackintosh described these documents as consisting of "business forms totaling 526 sheets including: Instructions on Zeroing out accounts, Affidavit of Termination of Presumed Contract(s) and Account(s), Affidavit of Notice of Default and Opportunity to Cure, Affidavit of Obligation, Affidavit of Negative Averment, Affidavit in Support of Tort Claim, Affidavit of Acceptance with Actual and Constructive Notice for Dishonor, Notice of Tort Claim, Non-Negotiable Commercial Dishonor Agreement, UCC Financing Statement, International Non-Negotiable Bill of Exchange, Bill of Acceptance, Notice of Expatriation, Revocation of Power of Attorney." Defendant Mackintosh determined that plaintiff could mail the materials, at his expense, to a single address provided by plaintiff no later than December 2, 2008. The materials would be disposed of if no suitable address were provided by plaintiff on or before that date. *See* Compl., ¶¶ 17-18 & Ex. 4.

On October 23, 2008, defendant Williams drafted a memorandum to defendant Bourne regarding plaintiff's grievance. The memorandum set forth the decision of defendant Mackintosh at the administrative hearing, and also indicated that defendant Wright had examined the documents and determined them to constitute prohibited Uniform Commercial Code (UCC) material. Plaintiff's

grievance was therefore denied. *See id.*, ¶ 19-20 & Exs. 5-6. Plaintiff alleges that on October 31, 2008, he spoke with defendant Williams about the matter, but that defendant Williams failed to have the materials returned to him. *See id.*, ¶ 21 & Ex. 7. On November 10, 2008, he filed a Step II grievance appeal, which was denied by defendant McRoberts on November 25, 2008. *See id.*, ¶ 22 & Exs. 8-9. Plaintiff alleges that he sent a Step III grievance appeal to defendant Caruso on December 1, 2008, but that as of January 12, 2009, she had failed to provide a response. *See id.*, ¶ 23 & Ex. 10. A grievance response was eventually provided, dated January 16, 2009. *See* Pl.'s Mot. for Injunction, Ex. 15. Plaintiff also alleges that defendants did not contact the Ingham County Circuit Court to verify that the documents were related to his pending litigation in that court, filed in Case No. 08-70-MP. *See id.*, ¶ 24. Plaintiff alleges that defendants were deliberately indifferent to, and engaged in a conspiracy to deprive him of, his constitutional right of access to the courts.

This matter is currently before the Court on three dispositive motions filed by the parties.[1] First, on April 6, 2009, defendants, with the exception of defendant Leffler, filed a motion to dismiss for failure to exhaust administrative remedies. They contend that plaintiff did not properly name them in his grievances, and thus plaintiff's claims are subject to dismissal under 42 U.S.C. § 1997e(a). Plaintiff filed a response to the motion on June 2, 2009. Second, on April 14, 2009, plaintiff filed a motion for injunction and temporary restraining order, seeking an order requiring defendants to return his materials. Defendants have not filed a response to this motion. Third, on April 27, 2009, defendants filed a motion for summary judgment. Defendants argue that plaintiff has failed to show a denial of his right to access the courts, that defendants Williams, Bourne,

---

[1]In addition, the parties have filed several nondispositive motions. These motions are addressed in separate Orders entered on this date.

McRoberts, Caruso, and Bell were not personally involved in the alleged deprivation of his rights, that plaintiff has failed to state a claim for conspiracy, and that they are entitled to qualified immunity. Plaintiff filed a response to this motion on June 8, 2009. For the reasons that follow, the Court should grant defendants' motion for summary judgment, deny as moot defendants' motion to dismiss, and deny plaintiff's motion for injunction.

B.      *Defendants' Motion for Summary Judgment*

  1.      *Legal Standard*

Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248). In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the

burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).

To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue. As the Supreme Court has explained:

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

    2.    *Access to Courts*

Plaintiff contends that defendants' actions violated his right of access to the courts because the materials confiscated from him were necessary to pursue a claim in the Michigan Court of Claims. Prisoners have a fundamental right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977). "The right springs from the Due Process Clauses of the Fifth and Fourteenth Amendments and the right of petition found in the First Amendment," *Hodge v. Prince*, 730 F. Supp. 747, 751 (N.D. Tex. 1990), as well as from the Privileges and Immunities Clause of Article IV. *See*

*Chambers v. Baltimore and Ohio R.R.*, 207 U.S. 142, 148 (1907). A prisoner's access to the courts must be adequate, effective and meaningful. *See Bell v. City of Milwaukee*, 746 F.2d 1205, 1261 (7th Cir. 1984); *Ryland v. Shapiro,* 708 F.2d 967, 972 (5th Cir. 1983). A prisoner asserting a denial of access to courts claim must satisfy the constitutional standing requirement by alleging an actual injury. *See Lewis v. Casey,* 518 U.S. 343, 349, 351-53 (1996). To meet this requirement, a plaintiff must show that the actions of the prison officials "hindered the prisoner's efforts to pursue a nonfrivolous claim." *Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996); *accord Lewis*, 518 U.S. at 353; *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996); *Stewart v. Block*, 938 F.Supp. 582, 586 (C.D. Cal. 1996) (plaintiff must show "a specific instance in which he was actually denied access to the courts.") (internal quotation omitted). Further, "the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354. The right of access to the courts "does not guarantee inmates the wherewithal to transform themselves into litigating engines," and thus the right is limited to safeguarding prisoners' ability "to attack their sentences, either directly or collaterally, and in order to challenge the conditions of their confinement." *Id.* at 355. Under *Lewis,* dismissal is appropriate where a prisoner fails to allege a specific, litigation-related detriment resulting from the prison official's conduct. *See Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

> As the Supreme Court has explained, to establish an access to courts claim,
>
> the named plaintiff must identify a nonfrivolous, arguable, underlying claim . . . . It follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation. It follows, too, that when the access claim (like this one) looks backward, the complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought. There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after

>litigating a simpler case without the denial-of-access element.

*Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

Here, plaintiff cannot establish a genuine issue of material fact with respect to whether he suffered a specific, litigation-related detriment to a nonfrivolous civil rights suit or attack on his conviction. Plaintiff alleges that UCC materials were necessary to pursue an action in the Michigan Court of Claims, and that the confiscation of his documents rendered him unable to pursue an appeal from that court's dismissal of his action. A review of the underlying action, however, establishes as a matter of law that petitioner was not hindered in his ability to pursue a nonfrivolous appeal of his criminal conviction or civil rights suit.[2] Plaintiff's action in the Michigan Court of Claims was brought against John Hallacy, the county prosecutor who brought the criminal charges against plaintiff; Michael Cox, the Michigan Attorney General; and the People of the State of Michigan. Although denominated as a "tort claim," the complaint challenged plaintiff's state court guilty plea conviction on what has been called the "redemptionist" theory. As other courts have explained,

>the "Redemptionist" theory . . . propounds that a person has a split personality: a real person and a fictional person called the "strawman." The "strawman" purportedly came into being when the United States went off the gold standard in 1933, and, instead, pledged the strawman of its citizens as collateral for the country's national debt. Redemptionists claim that government has power only over the strawman and not over the live person, who remains free. Individuals can free themselves by filing UCC financing statements, thereby acquiring an interest in their strawman. Thereafter, the real person can demand that government officials pay enormous sums of money to use the strawman's name or, in the case of prisoners, to keep him in custody. If government officials refuse, inmates are encouraged to file liens against correctional officers and other prison officials in order to extort their release from prison. Adherents of this scheme also advocate that inmates copyright their names

---

[2]The following description of plaintiff's underlying action is taken from Exhibit A to defendants' brief in support of their motion for summary judgment, which consists of plaintiff's state court complaint and the UCC and other documents attached to the complaint. Because this exhibit contains the very documents plaintiff's possession of which the parties dispute, the exhibit has been filed under seal.

> to justify filing liens against officials using their names in public records such as indictments or court papers.

*Monroe v. Beard*, 536 F.3d 198, 203 n.4 (3d Cir. 2008); *see also*, *Ray v. Williams*, No. CV-04-863, 2005 WL 697041, at *5 (D. Ore. Mar. 24, 2005).[3]

Plaintiff's claim that the confiscation of his UCC related materials denied him access to the state courts is without merit as a matter of law, for three reasons. First, as noted above the right of access to courts is limited to the pursuant of direct appeals from a criminal conviction, habeas corpus petitions, and civil rights suits regarding conditions of confinement. *See Lewis*, 518 U.S. at 355. Any claim based on the UCC is not one of these types of actions. "There is nothing in the Uniform Commercial Code which would help plaintiff challenge the legality of his conviction or the conditions of his confinement. Accordingly, plaintiff is unable to state a valid access to courts claim." *Osborne v. Hill*, No. 05-CV-641, 2006 WL 1215084, at *5 (D. Ore. May 1, 2006); *see also*, *Smith v. Catinella*, No. 08-14118, 2009 WL 4639112, at *9 (E.D. Mich. Dec. 1, 2009) (Lawson, J., adopting Report of Morgan, M.J.); *Friske v. Scutt*, No. 07-CV-13747, 2009 WL 454654, at *8 (E.D. Mich. Feb. 24, 2009) (Rosen, J.); *Tomzek v. Blatter*, No. 1:08-cv-635, 2008 WL 4738942, at * 5 (W.D. Mich. Oct. 24, 2008); *Frazier v. Diguglielmo*, 640 F. Supp. 2d 593, 599 (E.D. Pa. 2008).

Second, petitioner cannot show that his state court action was nonfrivolous. As noted above, it is petitioner's burden to establish the nonfrivolous nature of his claim. *See Christopher*, 536 U.S. at 415. Here, the state court explicitly dismissed plaintiff's action on the grounds that it was frivolous. *See* Def.s' Br. in Supp. of Mot. for Summ. J., Ex. B; *see also*, *Hogan v. Casal*, No. CV-

---

[3]In addition to his claims based on the UCC, plaintiff's state court complaint raised additional challenges to his conviction, such as that the state courts lacked jurisdiction because his personal sovereignty exceeds that of the State. Plaintiff does not allege here that defendants deprived him of any documents necessary to pursue these additional claims, and thus they are irrelevant to plaintiff's access to courts claim.

06-072, 2007 WL 2752427, at *3 (S.D. Tex. Sept. 20, 2007) (state court dismissal of action as frivolous precluded access to courts claim). Further, the courts have repeatedly held that the UCC has no bearing on the validity of a prisoner's conviction or subsequent incarceration. *See, e.g.*, *United States v. Holloway*, 11 Fed. Appx. 398, 400 (6th Cir. 2001); *United States v. Reed*, No. 4:09-CR-076, 2010 WL 99128, at *4 (D.N.D. Jan. 5, 2010); *Chandler v. Curtis*, No. 05-CV-72608-DT, 2005 WL 1640083, at *2 (E.D. Mich. July 13, 2005) (Cohn, J.). Indeed, the federal courts have repeatedly characterized such claims as frivolous. *See, e.g.*, *Noble v. Pearson*, No. 5:09-cv-123, 2009 WL 4728698, at *4 (S.D. Miss. Dec. 3, 2009); *Kestner v. Lafler*, No. 1:08-cv-877, 2009 WL 3754393, at *1 (W.D. Mich. Nov. 5, 2009); *Diaz v. Diaz*, No. 7:09-cv-00017, 2009 WL 272870, at *1 (W.D. Va. Feb. 3, 2009); *Smith v. Burt*, No. 08-CV-14239, 2008 WL 4791348, at *2 (E.D. Mich. Oct. 24, 2008) (Cohn, J.); *Bartz v. Van De Graaf*, No. 1:07-cv-219, 2008 WL 2704882, at *2 (D. Vt. July 8, 2008); *Hamby-Bey v. Bergh*, No. 08-CV-13284, 2008 WL 3286227, at *2 (E.D. Mich. Aug. 7, 2008) (Battani, J.). Thus, even if his state court action constituted one of the class of court cases protected by the access-to-courts right under *Lewis*, plaintiff cannot show that he was hindered in his ability to pursue a *nonfrivolous* action.

Third, plaintiff cannot show that the confiscation of his UCC materials actually hindered his ability to pursue the state court case. Plaintiff had the documents available to him at the time he filed his state court action in the Michigan Court of Claims, and he attached those documents to his state court complaint. Plaintiff alleges only that he did not have the documents available to him for purposes of filing an appeal. He fails to make any showing, however, that the absence of the documents hindered his ability to file an appeal. By that point, the documents had already been filed in the state trial court, and would have been part of the record on appeal. *See* MICH. CT. R.

7.210(A)(1) (on appeal "the record consists of the original papers filed in [the lower] court . . . ."). Plaintiff was not required to filed these documents as part of his notice of appeal. *See* MICH. CT. R. 7.204(B), (C). Nor was possession of the documents necessary for plaintiff to marshal his appellate arguments. Those arguments would have been the same as those asserted in his initial complaint, and there is no allegation that plaintiff was unaware of what his legal arguments were. Thus, plaintiff has failed to show that the confiscation of his papers actually hindered his ability to file an appeal.

In short, plaintiff has failed to show (1) that he was hindered in his ability to pursue (2) a nonfrivolous (3) challenge to his conviction or conditions of confinement. His failure to establish any one of these three things alone is sufficient to defeat his access to courts claim. His failure to establish all three clearly shows that the claim is without merit, and that defendants are entitled to judgment as a matter of law. Accordingly, the Court should grant defendants' motion for summary judgment.

       3.     *Effect of <u>Jones-Bey v. MDOC</u>*

I also note that the above analysis is not affected by the decisions of this Court and the Sixth Circuit in *Jones-Bey v. Michigan Department of Corrections*. In *Jones-Bey*, the prisoner challenged the constitutionality of MDOC Policy Directive 05.03.118(HH)(22), which at the time provided that "[p]risoners are prohibited from receiving mail that is a threat to the security, good order, or discipline of the facility . . . [including] [m]ail regarding actions that can be taken under the Uniform Commercial Code (UCC). This does not included legal materials which set forth the statute or provide a scholarly legal analysis of the UCC." Magistrate Judge Whalen issued a report and recommendation on the defendants' motion for summary judgment, concluding that this Policy

Directive violated the plaintiff's constitutional rights. Applying the four-factor test of *Turner v. Safley*, 482 U.S. 78 (1987),[4] Magistrate Judge Whalen concluded that the Policy Directive was rationally related to a legitimate penological interest, but that the regulation was overbroad and left no alternative avenues for prisoners to exercise their rights and that reworking the regulation to be more narrow in scope would not impose a significant burden on prison administration. *See Jones-Bey v. Michigan Dep't of Corrections*, No. 05-72817, at *4-*6 (E.D. Mich. June 27, 2006) (Whalen, M.J.). Magistrate Judge Whalen concluded that the defendants were entitled to qualified immunity from plaintiff's request for monetary damages because the law in this area was not clearly established. *See id.* at *6-*7, but also that plaintiff was entitled to an injunction prohibiting enforcement of Policy Directive 05.03.118(HH)(22). *See id.* at *8. Magistrate Judge Whalen subsequently issued an amended Report and Recommendation, recommending that injunctive relief was no longer necessary in light of the amendment to Policy Directive 05.03.118(HH)(22), which renumbered the paragraph as (23) and added that the restriction was on "[m]ail regarding actions that can be taken under the Uniform Commercial Code (UCC) *which could be used to harass or threaten another individual, including the filing of a lien against the individual.*" Magistrate Judge Whalen concluded that this amended Policy Directive was sufficiently narrowed to render it reasonable. *See Jones-Bey v. Michigan Dep't of Corrections*, No. 05-72817, 2006 WL 2850588, at *1 (E.D. Mich. July 21, 2006) (Whalen, M.J.).

---

[4]Under the *Turner* test, a court will uphold a challenged prison regulation that is reasonable. In determining the reasonableness of a regulation, a court must consider whether (1) there is "a valid, rational connection between the regulation and the legitimate governmental interest put forward to justify it;" (2) whether there are "alternative means of exercising the right that remain open to prison inmates;" (3) "the impact that accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally;" and (4) whether there are "alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests." *Turner*, 482 U.S. at 89-91.

On review of the parties' objections, Judge Hood adopted Magistrate Judge Whalen's initial Report and Recommendation, but disagreed that the amendment to the Policy Directive cured the constitutional problems. *See Jones-Bey v. Michigan Dep't of Corrections*, No. 05-72817, 2006 WL 2805643, at *2-*3 (E.D. Mich. Sept. 28, 2006). Judge Hood therefore entered a preliminary injunction prohibiting the defendants from enforcing Policy Directive 05.03.118(HH)(23) pending resolution of the case. *See id.* at *4. The defendants appealed the grant of a preliminary injunction to the Sixth Circuit, which affirmed in a 2-1 decision. The majority concluded that the Policy Directive furthers a legitimate governmental interest, but that other narrower means of furthering that interest exist. *See Jones v. Caruso*, 569 F.3d 258, 270-75 (6th Cir. 2009). The Court therefore concluded that plaintiff had demonstrated a likelihood of success on the merits of his claims, and that the remaining preliminary injunction factors weighed in favor of preliminary injunctive relief. *See id.* at 275-77.

Plaintiff makes much of *Jones-Bey*, apparently arguing that he is entitled to relief because the preliminary injunction in *Jones-Bey* precluded defendants from confiscating his UCC materials. This argument is without merit, for a number of reasons.[5] First, it is not clear that the preliminary injunction entered by the Court was proper or remains effective. Under the Prison Litigation Reform Act, "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a)(1). Further, a court may not grant injunctive relief unless it explicitly "finds that

---

[5]The application of the *Turner* test in *Jones-Bey* was arguably incorrect, for the reasons expressed in Judge McKeague's dissent and by other courts which have reached the opposite conclusion with respect to similar regulations. *See Jones*, 569 F.3d at 279-81 (McKeague, J., dissenting); *Monroe v. Beard*, 536 F.3d 198, 207-08 (3d Cir. 2008). Nevertheless, this Court is of course bound by that decision to the extent that it controls here.

such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." *Id*. Further, and important here, "[p]reliminary injunctive relief shall *automatically expire* on the date that is 90 days after its entry, unless the court makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period." 18 U.S.C. § 3626(a)(3) (emphasis added). Here, neither Magistrate Judge Whalen, Judge Hood, nor the Sixth Circuit considered these limitations on prospective relief, much less made the findings required by § 3626(a)(1). It thus appears under § 3626(a)(3) that the preliminary injunction terminated automatically 90 days after it was entered, which was well before the events giving rise to plaintiff's action.

More importantly, even assuming that the injunction remains in effect and that plaintiff can benefit from it in this case, the injunction is simply inapplicable here. Plaintiff's UCC materials were not confiscated on the basis of their being UCC materials under Policy Directive 05.03.118(HH)(23). Rather, they were confiscated on the basis that they constituted "[m]ail for the purpose of operating a business enterprise while within the facility." under Policy Directive 05.03.118(D)(7). *See* Compl., ¶¶ 17-18 & Ex. 4. In *Jones-Bey*, Judge Hood denied the plaintiff's motion for contempt based on the defendants' confiscation of his UCC materials under this Policy Directive, and the Sixth Circuit recognized this provision as an effective, narrower alternative to paragraph (HH)(23). *See Jones*, 569 F.3d at 273. Nothing in the Sixth Circuit's decision in *Jones* calls into question the validity of paragraph (D)(7) or defendants' application of it in plaintiff's case; on the contrary, the opinion suggests that paragraph (D)(7) is a permissible, narrow regulation. Because defendants' confiscated plaintiff's UCC materials under paragraph (D)(7), the *Jones-Bey*

14

injunction is simply inapplicable. *See Proctor v. Applegate*, ___ F. Supp. 2d ___, 2009 WL 3208283, at *15 (E.D. Mich. Sept. 30, 2009) (Borman, J., adopting Report of Hluchaniuk, M.J.); *Smith v. Catinella*, No. 08-14118, 2009 WL 2843934, at *5-*6 (E.D. Mich. Aug. 31, 2009) (Lawson, J.).

Finally, plaintiff does not in his complaint assert any freestanding constitutional right to possess UCC related materials. The claim asserted in his complaint is solely that the denial of his materials denied him his constitutional right of access to the courts. However, the *Jones* court confirmed that these types of materials "do not implicate [a prisoner]'s constitutional right of access to the courts[.]" *Jones*, 569 F.3d at 268. For these reasons, the Court should conclude that the *Jones-Bey* preliminary injunction does not compel a conclusion different from the one reached above, that is, that defendants are entitled to summary judgment on plaintiff's access to courts claim.

4.    *Conspiracy*

Plaintiff also alleges that defendants' actions amounted to a conspiracy to deprive him of his constitutional rights under 42 U.S.C. § 1985(3). Section 1985(3) provides:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

In *Griffin v. Breckenridge*, 403 U.S. 88 (1971), the Court concluded, after an examination

of the legislative history of the 1871 Ku Klux Klan Act upon which § 1985(3) is based, that the section reaches not only conspiracies formed under color of law, but also purely private conspiracies. *Id*. at 101. Wary that this might establish a general federal tort, the Court went on to state:

> The constitutional shoals that would lie in the path of interpreting § 1985(3) as a general federal tort law can be avoided by giving full effect to the congressional purpose--by requiring, as an element of the cause of action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment.

*Id*. at 102.  Thus, in order to state a cause of action under § 1985(3), "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id*.; *see also, Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268-69 (1993); *United Bhd. of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 833-35 (1983); *Lucero v. Operation Rescue of Birmingham*, 954 F.2d 624, 627-28 (11th Cir. 1992); *Volunteer Medical Clinic, Inc. v. Operation Rescue*, 948 F.2d 218, 223-24 (6th Cir. 1991).  This requirement must be met regardless of whether the conspiracy is purely private or involves state actors. *Cf. Trerice v. Pedersen*, 769 F.2d 1398, 1402 (9th Cir. 1985); *Harrison v. Brooks*, 519 F.2d 1358, 1359-60 (1st Cir. 1975).

Plaintiff has not alleged in his complaint that the defendants' actions were based on some racial or other invidiously discriminatory animus.  Thus, he has failed to state a claim under § 1985(3).  Further, because as noted above the defendants' actions "fail to implicate a constitutional right, a conspiracy that has as its purpose the very same non-cognizable [purpose] also fails to state a legal claim." *Mazloum v. District of Columbia*, 442 F. Supp. 2d 1, 10 (D.D.C. 2006); *see also*, *Lara v. City of Chicago*, 968 F. Supp. 1278, 1292 (N.D. Ill. 1997).

Plaintiff also asserts a related claim under 42 U.S.C. § 1986.  This claim fails for the same

16

reason. As another court has recently explained, § 1986:

> "provides the claimant with a cause of action against any person who, knowing that a violation of § 1985 is about to be committed and possessing power to prevent its occurrence, fails to take action to frustrate its execution." *Rogin v. Bensalem Township*, 616 F.2d 680, 696 (3d Cir.1980). Because § 1986 claims depend on a underlying violation of § 1985, "if the claimant does not set forth a cause of action under the latter, its claim under the former must fail also." *Id.* Because there is no conspiracy claim under § 1985(3), the defendants' motion for summary judgment under § 1986 for neglecting to prevent a conspiracy is granted.

*Burgos v. Canino*, 641 F. Supp. 2d 443, 458 (E.D. Pa. 2009). Accordingly, the Court should conclude that defendants are entitled to summary judgment with respect to plaintiff's claims under §§ 1985(3) and 1986.

C.      *Defendants' Motion to Dismiss*

In a separate motion defendants, with the exception of defendant Leffler, seek dismissal based on plaintiff's failure to exhaust his administrative remedies. The exhaustion statute provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The statute also provides, however, that a court may dismiss a claim on the merits without requiring exhaustion. *See* 42 U.S.C. § 1997e(c)(2). Because defendants are entitled to summary judgment on the merits, the Court need not consider whether plaintiff's claims are exhausted. *See Thomas v. Brockbank*, 195 Fed. Appx. 804, 808-09 (10th Cir. 2006); *Bowen v. Cady*, No. 09-10414, 2010 WL 148843, at *1, *3 n.2 (E.D. Mich. Jan. 13, 2010) (Cohn, J., adopting Report of Komives, M.J.); *Carr v. Tousley*, No. CV-06-0125, 2009 WL 1514661, at *16 (D. Idaho May 27, 2009). Accordingly, the Court should deny defendants' motion to dismiss as moot.

D.      *Plaintiff's Motion for Injunction*

Likewise, the Court should deny plaintiff's motion for injunction and temporary restraining order. "In the exercise of its discretion with respect to a motion for preliminary injunction, a district court must give consideration to four factors: '(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.'" *American Civil Liberties Union of Ky. v. McCreary County, Ky.*, 354 F.3d 438, 445 (6th Cir. 2003) (quoting *Rock and Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir.1998)); *see also*, *Taubman Co. v. Webfeats*, 319 F.3d 770, 774 (6th Cir. 2003).

"'The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met.'" *Hamad v. Woodcrest Condominium Ass'n*, 328 F.3d 224, 230 (6th Cir. 2003) (quoting *Michigan Bell Tel. Co. v. Engler*, 257 F.3d 587, 592 (6th Cir.2001)); *see also*, *Taubman Co.*, 319 F.3d at 774. Notwithstanding this balancing approach, however, the likelihood of success and irreparable harm factors predominate the preliminary injunction inquiry. Thus, "[a]lthough no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. National Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000); *see also*, *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997) ("While, as a general matter, none of these four factors are given controlling weight, a preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed."). Further, plaintiff bears the burden of demonstrating their entitlement to a preliminary injunction, and his burden is a heavy one. "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the

18

circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). "[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).

Here, as noted above, defendants are entitled to summary judgment on plaintiff's claims. Plaintiff thus cannot show any likelihood of success on the merits, and has failed to meet his heavy burden of demonstrating entitlement to a preliminary injunction. Accordingly, the Court should deny plaintiff's motion for injunction and temporary restraining order.

E.  *Conclusion*

In view of the foregoing, the Court should conclude that there is no genuine issue of material fact with respect to whether defendants infringed plaintiff's constitutional right to access the courts or engaged in a conspiracy under § 1985(3) and that defendants are entitled to judgment as a matter of law. Accordingly, the Court should grant defendants' motion for summary judgment. If the Court accepts this recommendation, the Court should also deny as moot defendants' motion to dismiss for lack of exhaustion, and should deny plaintiff's motion for injunction and temporary restraining order.

III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which

raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                  s/Paul J. Komives
                                                  PAUL J. KOMIVES
                                                  UNITED STATES MAGISTRATE JUDGE

Dated: 2/1/10

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on February 1, 2010.
>
>                               s/Eddrey Butts
>                               Case Manager